188 So.2d 56 (1966)
Oscar WOODY, Jr., Appellant,
v.
Hon. Haydon BURNS, Governor, Hon. Tom Adams, Secretary of State, Hon. Earl Faircloth, Attorney General, Hon. Broward Williams, Treasurer, and Hon. Thomas D. Bailey, State Superintendent of Public Instruction, As and Constituting the State Board of Education of Florida, and the Board of Regents, a Corporation, Appellee.
No. H-379.
District Court of Appeal of Florida. First District.
June 21, 1966.
Rehearing Denied July 21, 1966.
*57 Richard J. Wilson, Gainesville, for appellant.
Earl Faircloth, Atty. Gen., and Sam G. Harrison, Jr., Asst. Atty. Gen., for appellee.
RAWLS, Chief Judge.
Oscar Woody, Jr. has appealed from an order of the circuit court quashing an alternative writ of mandamus by which the appellant was seeking an order requiring the University of Florida to admit him to the College of Architecture and Fine Arts.
Woody was admitted to the University of Florida as a junior, but on January 3, 1963 he was prevented from reregistering when he voluntarily disclosed that during the preceding trimester he had not taken the Art 207 course as he had been instructed to do by his department head and student advisor, Professor Grissom, who had refused to accept a Pensacola Junior College course as a substitute for the required Art 207. For this offense Woody was charged with altering a "basic record of the university; that is, the course assignment card, without prior permission of Professor Grissom * * *." The charge was heard by the Faculty Discipline Committee. Woody was present and testified that at his request the card was altered by Professor Ward, the faculty member who was authorized to make course changes during registration. On January 14, 1963 the Committee by split decision with the chairman casting the deciding vote found that "Mr. Woody was not proven guilty of physically altering the Course Assignment Card * * * [but was] guilty of conduct unbecoming a University of Florida student in that he did knowingly cause a university record to be altered against the stated wishes of his Department Head." The Committee recommended to Dr. J. Wayne Reitz, President of the University of Florida, that Woody be placed on disciplinary probation for the remainder of his undergraduate career, which recommendation was approved.
The Faculty Discipline Committee's decision was not appealed, but two days after rendition of same Woody petitioned to register late. This petition was acted upon and denied by the faculty committee of the College of Architecture and Fine Arts without granting notice and hearing to Oscar Woody. Woody remained out of school for the remainder of the trimester, but applied for enrollment at the commencement of the next succeeding trimester. This application was summarily denied by the University officials without notice or hearing. The matter was eventually brought before Dr. Reitz who informed Woody's attorney that the faculty committee took the position that Woody's failure to take Art 207 constituted a defiance of the college requirements and resulted in his disqualifying himself from further attendance in the college due to failure to maintain a satisfactory academic record. In affirming the committee's decision Dr. Reitz noted that the committee's action was influenced by the report of both departments that his conduct and behavior had created a disturbing influence in classes and his defiance of regulations and lack of cooperation had been demonstrated in situations prior to the incident relating to failure to register for Art 207. Thus, the faculty committee for the College of Architecture and Fine Arts when considering Woody's petition to register late, went beyond the question presented and expelled him permanently from that college. It made that decision without notice and hearing, and based same upon incidents which are not matters of record and upon which the student had never been given an opportunity to be heard.
In due course the matter was appealed to the Board of Regents. The hearing held *58 by the Board was attended by Woody and his counsel who presented evidence showing that Woody had maintained a "B" average at the University. The Board further heard the argument of Dr. Reitz to the effect that the faculty of the College of Architecture & Fine Arts "did not wish Mr. Woody to continue as a student in that college" and that according to accepted university administration principles the faculty has the right to admit or exclude any student from its program because in awarding degrees it places its stamp of approval and recommendation on the individual. The Board affirmed the decision of the President to deny Woody further enrollment in the College of Architecture and Fine Arts without prejudice to apply for enrollment in the other colleges of the University. This decision was subsequently affirmed by the State Board of Education, and Oscar Woody, Jr. filed his alternative writ of mandamus seeking to compel his admission for the following trimester. The alternative writ was quashed by the trial judge and this appeal followed.
The only point posed by this appeal is, Has ample administrative due process of law been afforded a student excluded from a state-supported institution of higher learning, when such exclusion results from an ex parte order of university officials issued as a result of a hearing held without an opportunity being afforded the student to defend himself against charges of misconduct?
At the outset we note that the decision of the faculty committee of the College of Architecture and Fine Arts is tantamount to expulsion. It was based solely upon misconduct and not upon failure to maintain the required academic standard. The decision for exclusion was made without notice and hearing to Appellant, was based upon matters concerning which he had never had an opportunity to be heard, and in spite of these deficiencies it was approved by the President of the University, the Board of Regents, and the State Board of Education.
It has been held that constitutional due process requires notice and opportunity for hearing before a student at a tax-supported college or university can be expelled for misconduct.[1] This court is compelled to follow these decisions, the basis of which is that a charge of misconduct, as opposed to failure to meet the scholastic standards of the college, depends upon a collection of the facts which are easily colored by the point of view of the witness. The minimum criteria of due process governing disciplinary bodies of tax-supported institutions are set forth in Due v. Florida A. & M. University.[2] Briefly they include: 1. Notice containing a statement of the specific charges and grounds which if proven would justify expulsion under duly established regulations, 2. A hearing which gives the disciplinary body opportunity to hear both sides in considerable detail and allows the student to produce his own defense either by oral testimony or written affidavits of witnesses, 3. The action to be taken only by an authorized duly established disciplinary body organized and operated by well-defined procedures, and 4. The results and findings of the hearing to be presented in a report open to the student's inspection. Not one of these four elements is present here. This court adopts the views set forth in Due, supra, and reiterates that a full-dress judicial hearing is not required. However the principles of fair play require that before a student may be denied the right to continue his studies at a state-supported university due to misconduct he shall be advised of all the charges against him and be given an opportunity to refute same. When these requirements are met, the judgment of a duly constituted disciplinary committee functioning in a normal manner by well-defined procedures will not be lightly *59 disturbed although it is not required to operate by a system of rigid procedure.
Unlike the Due case, the action here is invalid on its face not only because Appellant was never confronted with the charges against him and was not given an opportunity to present his case before the committee that excluded him, but also because the faculty committee, instead of bringing open charges of misconduct in the usual manner before the disciplinary committee, circumvented that duly authorized committee and arrogated unto itself the authority of imposing its own penalty for Appellant's misconduct. In this respect the 1962-1963 University of Florida catalog charges each college with the responsibility of enforcing only its academic standards, in the following words:
"Any college of the University may enforce additional academic standards and each student is responsible to his college for observing the regulations relating to such additional standards." (Emphasis supplied.)
Those charged with the administration of the state's institutions of higher learning are vested with broad discretion in determining the scholastic and moral standards students must meet to obtain admission to the various colleges of the university system. They likewise must determine the standard of behavior necessary to maintain discipline and general good conduct of the members of the student body as is essential to preserve high public regard for the graduates and alumni of our state-supported universities and to properly utilize the facilities and services which the universities are intended to provide. However here the essence of the decision ordering exclusion is that Appellant's conduct and behavior was of a standard which would not preclude his attendance at the University of Florida, but was such as would exclude his attendance in the College of Architecture and Fine Arts solely because the faculty of that college "did not wish Mr. Woody to continue as a student." There was no determination that Appellant's conduct did not meet the behavior standard required of University of Florida students as set by those who are authorized to exercise their discretion in determining what shall be considered unacceptable conduct warranting expulsion. Appellant's conduct relative to his failure to register in the appropriate courses was determined by the duly constituted Discipline Committee by a split vote to warrant only probation.
The University of Florida is not the private property of those employed by the citizens of this state to perform the responsibility of providing a program of higher education primarily for the students of this state. This record presents an incongruous situation wherein the University of Florida says this student's conduct is not acceptable to the faculty members of one college but that the same conduct does not make him ineligible for acceptance by other colleges of the university complex. We are not aware of the delegation by the legislature or the State Board of Education or the Board of Regents to the faculty members of any college of the higher education system of this state to arbitrarily or capriciously decide who they desire to teach, and should such delegation be attempted it would amount to creating a hierarchy contrary to all of the fundamental concepts of a democratic society. This is not to say that those charged with the responsibility of operating our universities are not responsible for establishing basic standards of conduct and enforcing same on the campuses of our state-supported colleges and universities. On the contrary it is their duty to take affirmative action to exclude from the student body those individuals not conforming to the established standards. However the manner of enforcement must be by a duly authorized body in accordance with procedures which permit the student an opportunity to vindicate himself, if he can and so desires.
The trial judge was of the opinion that the hearing granted the Appellant by the Board of Regents was sufficient to satisfy the requirement in that respect. Even there *60 Appellant was not advised of the acts of misconduct upon which was grounded his exclusion from the college of his choice.
The judgment appealed is reversed with directions to the trial judge to reinstate the alternative writ of mandamus and for further proceedings consistent with this opinion.
WIGGINTON and CARROLL, DONALD K., JJ., concur.
NOTES
[1] Due v. Florida A. & M. University, 233 F. Supp. 396 (N.D.Fla. 1963) and Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.1961).
[2] Due v. Florida A. & M. University, Ibid.