704 So.2d 697 (1997)
Maria P. GLASS, both individually and in her capacity as Principal of St. Bartholomew Catholic, and Archdiocese of Miami, d/b/a St. Bartholomew Catholic, Appellants,
v.
Peter ANDERSON and Bernadette Anderson, both individually and as Parents, Guardians and Next of Kin of Paul Anderson, Christine Anderson and John Anderson, minors, Appellees.
No. 97-3087.
District Court of Appeal of Florida, Fourth District.
December 31, 1997.
Rehearing and Rehearing Denied January 28, 1998.
James F. Gilbride and Michael Natiello of Gilbride, Heller & Brown, P.A., Miami, for appellants.
Christopher A. Ferrara and David P. Affinito of American Catholic Lawyers Association, Inc., Fairfield, NJ, and Robert N. Allen of Allen & Galego, Miami, for appellees.
Rehearing and Rehearing En Banc Denied January 28, 1998.
*698 KLEIN, Judge.
The trial court, after an evidentiary hearing, entered a temporary injunction prohibiting a private school from expelling children whose parents objected to the children being exposed to a part of the school's curriculum. We reverse.
St. Bartholomew Catholic School, in which the Andersons' children were enrolled, teaches a course known as the "Benziger Family Life Course," which is taught at all grade levels, kindergarten through eighth. Portions of the course deal with human sexuality, and the Andersons objected to their children having to take the course. The school was willing to excuse the children, and did so for the 1994-95 school year; however, in July 1995 the school wrote the Andersons advising them that their children would no longer be exempt from the course. The Andersons then threatened to file a lawsuit, and after discussions between counsel for both sides, the school's counsel wrote the following letter to the Andersons' counsel:
This will confirm that the Archdiocese of Miami will adhere to the criteria as contained in the USCC publication dated November 21, 1990, entitled Human Sexuality; A Catholic Perspective for Education and Lifelong Learning. Accordingly, your clients will be permitted to withdraw their children from those human sexuality classes which they deem would not be in the best interests of their children. Furthermore, no academic penalty or harassment of your clients and their children will result from these proceedings. Lastly, we will make every reasonable effort to advise your clients in advance of the content of future human sexuality classroom instruction.
The Andersons' counsel responded as follows:
Based on your representation in our telephone conversation of December 14, 1995 that your letter of the same date embraces all programs involving human sexuality at Saint Bartholomew's school, including not only the Benziger course but `AIDS Education,' my clients agree with your letter and hereby accept a settlement on the terms therein. In reliance on your letter, they will not be pursuing the civil claims we have discussed.
From the exchange of the above letters in December 1995 until the summer of 1996, the Anderson children were totally exempt from taking the course. There were a number of incidents, however, resulting in the Andersons complaining that their children were wrongfully being disciplined by the school in retaliation for the dispute over the course. In September, 1996, the school wrote the Andersons that the children would not be exempt from the entire course, but only from those portions which the school determined they should be exempt from. There were further disputes between the school and the Andersons during that school year, and in March 1997, the school wrote the Andersons a letter advising that their children would not be accepted for the next school year.
The Andersons then filed this lawsuit seeking damages for breach of contract and intentional infliction of emotional distress as well as injunctive relief. After an evidentiary hearing the trial court entered a temporary injunction on May 1, 1997, ordering that the school allow the children to attend for the remainder of the academic year and to hold spaces for the children for the next year. The court conditioned the injunction on the Andersons specifically stating what portions of the human sexuality classes their children should not attend. The school appeals that temporary injunction.
The first argument raised by the school is that the trial court, in violation of the Establishment Clause of the First Amendment to the United States Constitution, has involved itself in an ecclesiastical matter. See e.g., Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). The trial court rejected that argument because it viewed the issue narrowly, as involving only a contract between the parties as evidenced by the above quoted letters. We need not determine whether the trial court was correct in that regard, because we find that the contract between the school and the children is a *699 contract for personal services which is not enforceable by an injunction.
On all fours is Bloch v. Hillel Torah North Suburban Day School, 100 Ill.App.3d 204, 55 Ill.Dec. 651, 426 N.E.2d 976 (1st Dist. 1981), in which a student was expelled from a private Jewish school. Affirming the denial of an injunction, the Illinois Appellate Court explained:
It is beyond dispute that the relationship between a grade school and a student is one highly personal in nature. Similarly, it is apparent that performance of such a contract requires a rendition of a variety of personal services. Although we are cognizant of the difficulties in duplicating the personal services offered by one school, particularly one like defendant, we are even more aware of the difficulties pervasive in compelling the continuation of a relationship between a young child and a private school which openly resists that relationship. In such a case, we believe the trial court exercised sound judgment in ruling that plaintiffs are best left to their remedy for damages.
See also St. Joseph School v. Lamm, 288 Ala. 68, 257 So.2d 318 (1972) (specific performance not available in regard to contract of private school to educate child because it calls for personal services).
It is well established in Florida that contracts for personal services are not enforceable by injunction or specific performance. Montaner v. Big Show Productions, S.A., 620 So.2d 246 (Fla. 3d DCA 1993) and cases cited therein.
In addition to finding that the contract between the school and student in Bloch was one for personal services, the Illinois court also denied injunctive relief because court enforcement and supervision of an order of specific performance would be "problematic." Id., 55 Ill. Dec. at 652, 426 N.E.2d at 977. That principle, that courts will not grant injunctions requiring certain types of future performance because of the inability of courts to supervise that performance, is also well established in Florida. Mayor's Jewelers v. State of Cal. Public Employees' Retirement System., 685 So.2d 904, 905 (Fla. 4th DCA 1996).
In the present case, the record shows that the court had to get involved in disputes involving what portions of the course the Anderson's children would be exposed to, as well as whether the school was treating the children unfairly in other areas because it did not want them there. If the school were compelled to educate all of the children until they graduate from eighth grade, it is clear from what has gone on in the past that the trial court would be continuously embroiled in this controversy.
The Andersons argue that Bloch and Lamm, on which we rely, are not the law in Florida; however, all of the cases on which they rely involve colleges or universities. See e.g., Woody v. Burns, 188 So.2d 56, 58 (Fla. 1st DCA 1966) (reinstating student to University of Florida's College of Architecture because his expulsion was without notice or opportunity to be heard). We find those cases distinguishable for two reasons. First, college students are, for the most part, legally adults, and the educational services provided by colleges are not personal services, as are the services provided to children of tender years by schools such as appellant. Second, an injunction in the present case will require ongoing supervision by the court to resolve disputes involving which portions of the family life course the Anderson children will have to take. In the Woody case, and others like it, on which the Andersons rely, the students were not seeking unique treatment which would have resulted in the courts having to be continuously resolving disputes as to how that treatment was being administered.
We therefore conclude that the Andersons are not entitled to injunctive relief and reverse the order granting the temporary injunction.
POLEN and GROSS, JJ., concur.