**Raymond GRANT and Arline Grant Plaintiffs**

v.

**UNITED STATES of America Defendant**

**No. 02–61668–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

July 3, 2003.

Robin Frances Frydman, Charles Howard Lichtman, Berger Singerman, Las Olas Centre II, Fort Lauderdale, FL, for Raymond Grant, Arline Grant, plaintiffs.

Deborah M. Morris, United States Department of Justice, Tax Division, Washington, DC, for United States of America, defendant.

### ORDER ON MOTION TO DISMISS

JORDAN, District Judge.

The Grants sue the government for unauthorized tax collection actions pursuant to 26 U.S.C. § 7433, specific performance of an installment agreement, and release of levy and return of social security benefits. The government filed a motion to dismiss, arguing that the complaint fails to state a cause of action. For the reasons discussed below, the motion to dismiss [D.E. 4] is GRANTED IN PART and DENIED IN PART.

### I. ALLEGATIONS

Starting in 1977, upon the advice of accountants and attorneys, Raymond Grant

and several other prominent businessmen formed what were then totally legal limited partnerships structured around coal mining, real estate, plastics recycling equipment, and other matters, planning to take advantage of certain tax credits and deductions. *See* Complaint at ¶ 8. In 1992, however, the U.S. Tax Court found that the partnerships did not qualify for the tax credits and deductions, and the IRS assessed tax deficiencies against the Grants. *See id.* at ¶ 9. The Grants have always properly reported their income to the IRS and paid taxes as they became due. *See id.* at ¶ 10.

On April 12, 1994, after unsuccessfully challenging the tax assessments for several years, the Grants entered into a Form 433–D installment agreement with the IRS for the tax period covering 1987 through 1997. The Grants agreed to pay $3,000 per month until the tax liability was paid in full. The agreement was negotiated by IRS agent P. Smith, and was approved by his supervisor, P. Martin. *See id.* at ¶ 11. At the time the Grants entered into the installment agreement, they fully disclosed to the IRS the existence of two irrevocable trusts and transfers they had made to those trusts. At the time of the creation of the trusts and when the transfers were made, no tax assessments had been made against the Grants. *See id.* at ¶ 14.

For five years, the Grants timely made each and every payment due under the installment agreement and complied with all conditions of the agreement. They responded to each request made by the IRS to furnish updated documents with respect to their assets, and at no time did the updated information reflect a change in their ability to make the monthly payments. Moreover, the Grants timely filed all federal tax returns and paid federal taxes that became due while the agree-

ment was in effect. At no time was the collection of the tax in jeopardy. *See id.* at ¶ 15.

Sometime in 1999, Agent Smith passed away, and Calvin Byrd was assigned as the new IRS agent in charge of the Grants' case. *See id.* at ¶ 16. Agent Byrd did not like the deal his predecessor had made with the Grants. He pushed the Grants to distribute to the IRS the assets of the two irrevocable trusts that were formed in 1983 and 1984. *See id.* at ¶ 17. In December of 1999, Agent Byrd advised Mr. Grant by telephone that he was terminating the installment agreement despite the Grants' timely, continued compliance with all of its terms. Agent Byrd did not give the Grants 30 days' written notice prior to terminating the agreement, nor did he provide an explanation for why he was terminating it. *See id.* at ¶ 19.

On November 27, 2000, the Grants were served with a complaint authorized to be filed by the Chief Counsel of the IRS to obtain a judgment for unpaid federal income tax liabilities for the years 1977 through 1990. *See id.* at ¶ 20. *See also United States v. Raymond Grant and Arline Grant,* No. 00–8986–Civ–Jordan (S.D.Fla.) ("Tax Case I"). On January 2, 2001, and each month thereafter, the IRS levied upon the Grants' monthly social security benefits. *See id.* at ¶ 21.

On February 28, 2001, after the Grants failed to answer or respond to the government's complaint in Tax Case I, I entered a default judgment against them.[1] Indeed, the Grants did not appear in the case until November 21, 2001, after the government moved to repatriate their assets. On November 5, 2002, I set aside the default judgment and permitted the Grants to contest the amount of tax liabili-

---

1. I may, and do, take judicial notice of the record of the prior action. *See Bryant v.* *Avado Brands, Inc.,* 187 F.3d 1271, 1276 (11th Cir.1999).

ty. Finally, on March 31, 2003, I granted the government's motion for summary judgment and entered final judgment and against the Grants.

On November 4, 2002, after a hearing in the prior case, Agent Byrd, outside the presence of the Grants' counsel, said to Mr. Grant, "Now we met, and we will meet again and again and again and again." Complaint at ¶ 24.

## II. MOTION TO DISMISS STANDARD

A motion to dismiss should not be granted unless it appears beyond doubt that the Grants could prove no set of facts in support of their claim which would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). I must take the allegations of the complaint as true and must read the complaint to include any theory on which the Grants can recover. *See Linder v. Portocarrero*, 963 F.2d 332, 334–36 (11th Cir. 1992). All reasonable inferences must be construed in a light most favorable to the plaintiff. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir.2000). A dismissal under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368–69 (11th Cir.1997) (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir.1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir.1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate.")). Nevertheless, Rule 12(b)(6) permits the dismissal of a complaint on a dispositive issue of law if no construction of the factual allegations of the complaint can support the cause of action. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991).

## III. ANALYSIS

### A. COUNT I—UNAUTHORIZED COLLECTION ACTIONS

Count I of the complaint seeks damages pursuant to 26 U.S.C. § 7433 for unauthorized tax collection actions. The government argues that Count I should be dismissed because the Grants have failed to exhaust their administrative remedies and because the allegations under Count I in any event fail to state a claim.

#### 1. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Before bringing an action under § 7433, a plaintiff must exhaust certain administrative remedies. *See* 26 U.S.C. § 7433(d)(1). No action shall be maintained before the earlier of (1) the date a decision is rendered on an administrative claim with the IRS or (2) six months after the claim is filed. *See* 26 C.F.R. § 301.7433–1(d). The Grants allege that "[a]ll conditions precedent to bringing this lawsuit have been performed, waived, excused or otherwise have occurred." Complaint at ¶ 6.

According to Rule 9(c) of the Federal Rules of Civil Procedure, a plaintiff need only allege the performance of a condition precedent generally. The government argues, however, that because § 7433 involves a waiver of sovereign immunity, exhaustion of administrative remedies must be pled with more specificity. *See Thomson v. United States*, No. 00–9065–Civ, 2001 WL 1022518, at *3 (S.D.Fla. July 27, 2001) ("[T]he Complaint does not sufficiently allege that Plaintiff has exhausted the administrative remedies of the IRS because the Complaint makes the unsupported assertion that all remedies were exhausted, without providing specificity.").

■ In this case, however, aside from generally alleging exhaustion of the admin-

istrative remedies, the complaint also states that "[s]pecifically, the Grants have filed an administrative claim with the Chief, Special Procedures Function of the IRS pursuant to 26 C.F.R. §§ 301.7433–1(d)(1) and (2), 301.6343–1(c), 301.6343–2(b)." I find that this allegation comports with Rule 9(c)'s relaxed requirement for pleading satisfaction of conditions precedent. Thus, the Grants have pled the exhaustion of remedies with sufficient specificity. To the extent that *Thomson* requires more, I decline to follow it.

## 2. TERMINATION OF THE INSTALLMENT AGREEMENT

As one basis for their § 7433 claim, the Grants allege that the IRS improperly terminated their installment agreement. The government argues that any action under this theory is barred by the statute of limitations.

■ An action to enforce liability premised on § 7433 must be brought within two years after the date the right of action accrues. *See* 26 U.S.C. § 7433(d)(3). The right of action accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action. *See* 26 C.F.R. § 301.7433–1(g)(2). The Grants allege that "in December of 1999, [IRS agent Calvin] Byrd advised Grant by telephone that he was terminating the Installment Agreement despite the Grants' timely, continued compliance with all of its terms." Complaint at ¶ 19. The government, therefore, argues that the action is time barred because it was filed on November 25, 2002, more than two years after the Grants became aware of the termination.

The Grants, however, contend that the telephone call in December of 1999 did not constitute discovery of the right of action because, in order to terminate an installment agreement, the IRS must give 30 days' written notice. *See* 26 U.S.C. § 6159(b)(5). The Grants, therefore, argue that because they did not receive written notice, they did not discover the right of action until served with the complaint in Tax Case I on November 27, 2000, less than two years before the complaint in this case was filed.

Given the statutory requirement of written notice to terminate an installment agreement, I find that it is inappropriate to resolve the statute of limitations issue at the motion to dismiss stage. Accordingly, the motion to dismiss the claims relating to the termination of the installment agreement is denied.

## 3. FILING OF TAX CASE I

The Grants also allege that the filing of Tax Case I was an unauthorized collection action under § 7433. They point out that an installment agreement must remain in effect unless certain conditions are satisfied. *See* 26 U.S.C. § 6159(b). Because none of these conditions was satisfied in this case, the Grants argue that the filing of Tax Case I circumvented the requirements of § 6159(b). This argument fails for two reasons.

■ First, in Tax Case I, I determined that § 6159 does not prevent the government from filing suit to reduce tax liability to judgment, even when an installment agreement is in effect. *See* Tax Case I, Order on Motions for Summary Judgment at 3–4 [D.E. 68]. Counsel for the Grants conceded as much during oral argument. Accordingly, any § 7433 action based on the filing of Tax Case I must be dismissed under the doctrine of *res judicata*. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001).

■ Second, this cause of action should have been raised as a compulsory counterclaim in Tax Case I because it arises from the same set of operative facts as the

government's attempt to reduce the tax liability to judgment. *See* Fed.R.Civ.P. 13(a). *See also Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1336 (11th Cir.1998). Thus, this portion of Count I must be dismissed with prejudice.

### 4. LEVYING OF THE SOCIAL SECURITY BENEFITS

■ The Grants allege that, on January 2, 2001, the IRS began levying on their social security benefits while the installment agreement was still in effect. *See* Complaint at ¶ 21. They argue that this constitutes an unauthorized collection practice under § 7433. As provided in 26 U.S.C. § 6343(a)(1)(C), the IRS must release a levy when the taxpayer has entered into an installment agreement to satisfy his tax liability.

The government argues that § 6343(a)(1)(C) does not apply because the installment agreement was terminated. The Grants, however, have specifically alleged that "because [Agent] Byrd did not comply with 26 U.S.C. § 6159 when attempting to terminate the Agreement, the Agreement is still in effect." Complaint at ¶ 19. Whether or not this is actually true will be determined throughout the course of the litigation. The allegation, however, prevents dismissal of the claim at this stage.

### 5. MOTION TO REPATRIATE

■ The Grants also allege that the government's filing of a motion to repatriate assets in Tax Case I on October 22, 2001, was an unauthorized collection action under § 7433. *See* Complaint at ¶ 25. But § 7433 only applies to unauthorized collection actions by IRS employees, and the motion to repatriate assets was filed by Department of Justice attorneys. The Grants argue that § 7433 should be read to include this type of conduct.

Because § 7433 is a waiver of sovereign immunity, I must strictly construe it and refrain from extending it beyond the specific statutory language it contains. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). *See also Wood v. United States*, No. 02–21320–Civ–Huck, 2002 WL 31973260, at *8 (S.D.Fla. Dec. 17, 2002) ("[A]ll waivers of sovereign immunity must be strictly construed. § 7433 is no exception."). The statutory language of § 7433 specifically states that it only applies to actions of an IRS employee. There is no indication that actions of DOJ attorneys should be included, even when those attorneys are prosecuting a case related to the collection of an unpaid tax. Accordingly, the § 7433 action based on the filing of the motion to repatriate assets must be dismissed without prejudice.

### 6. COMMUNICATION WITH MR. GRANT

As their final basis for relief under Count I, the Grants allege that on November 4, 2002, after a hearing in Tax Case I, Agent Byrd said to Mr. Grant, "Now we met, and we will meet again and again and again and again." Complaint at ¶ 24. The Grants argue that this communication violates 26 U.S.C. § 6304, and that they are, therefore, entitled to maintain a claim on this basis pursuant to § 7433.

■ The IRS may not communicate with a taxpayer in connection with the collection of any unpaid tax "if the [IRS] knows the taxpayer is represented by any person authorized to practice before the Internal Revenue Service ..." 26 U.S.C. § 6304(a)(2). It is unnecessary to determine whether the November 4 communication was made "in connection with the collection of an unpaid tax." The Grants, although they have alleged that Agent Byrd made the communication with knowledge that the Grants were represented by

counsel, Complaint at ¶ 24, have not alleged that he made the communication with knowledge that the Grants were represented by a person "authorized to practice before the Internal Revenue Service." Accordingly, the § 7433 action based on Agent Byrd's communication must be dismissed without prejudice.

### B. COUNT II—SPECIFIC PERFORMANCE

■ In Count II, the Grants seek specific performance of the installment agreement. The government argues that this claim cannot be sustained because it has not waived sovereign immunity with respect to an action for specific performance. The Grants suggest that 28 U.S.C. § 1346 permits them to maintain Count II. It provides, in relevant part, that the district courts have jurisdiction over

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, . . . upon any express or implied contract with the United States . . .

28 U.S.C. § 1346(a). Neither of these provisions waives sovereign immunity with respect to a claim for specific performance of a contract.

Specific performance is a form of injunctive relief. *See Romeo v. United States,* 462 F.2d 1036, 1037 (5th Cir.1972). *Cf. Glass v. Anderson,* 704 So.2d 697, 699 (Fla. 4th DCA 1997). I conclude that § 1343(a)(1) waives sovereign immunity only with respect to claims for the recovery of taxes already paid, and does not permit an action for injunctive relief

against the United States. *See Smith v. Booth,* 823 F.2d 94, 97 (5th Cir.1987). In *Smith,* the Fifth Circuit specifically held that § 1346 did not constitute a waiver of sovereign immunity with respect to an action seeking injunctive relief in connection with a challenge to a decision of the IRS to deny the plaintiffs' election to pay their tax liability in installments. *See id.* Likewise, § 1343(a)(2) likewise does not waive sovereign immunity with respect to Count II, because it is limited to claims for money damages. *See Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (§ 1343(a)(2) "empowers district courts to award damages but not to award injunctive or declaratory relief").

The Grants' only response is a suggestion that I should read § 1346's waiver of sovereign immunity broadly. As discussed above, however, all waivers of sovereign immunity must be strictly construed, *see Nordic Village,* 503 U.S. at 33–34, 112 S.Ct. 1011, and I may not craft additional jurisdictional power in the face of statutory language to the contrary. Count II is dismissed with prejudice.

### C. COUNT III—RELEASE OF LEVY AND RETURN OF SOCIAL SECURITY BENEFITS

In Count III, the Grants seek a release of the levy on their social security benefits and a return of any benefits already paid. Because they represent distinct causes of action, I will address each of the issues in turn.

#### 1. RELEASE OF LEVY

■ In seeking a release of the levy upon their social security benefits, the Grants are essentially asking me to enjoin the government from collecting a tax. Such an injunction is strictly prohibited by the Anti–Injunction Act. *See* 26 U.S.C. § 7421(a) (subject to limited exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be

maintained in any court by any person, whether or not such person is the person against whom such tax was assessed"). Although § 7421 does set forth several specific exceptions, the Grants do not argue that these exceptions are applicable.

The Supreme Court has also recognized a judicial exception to the Anti–Injunction Act. In *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 6, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), it concluded that § 7421 applies (1) unless under no circumstances can the government prevail, and (2) if equity jurisdiction otherwise exists. The burden is on the Grants to show that the *Enochs* exception applies. *See Bowers v. United States*, 423 F.2d 1207, 1208 (5th Cir.1970). Because I find that equity jurisdiction does not exist, I need not address whether the government has no chance to prevail.

The standards for equitable relief in federal courts are irreparable injury and inadequate legal remedies. *See Lovell v. United States*, 795 F.2d 976, 977 (11th Cir. 1986). Regardless of whether the Grants are threatened with irreparable harm, they have an adequate remedy at law, and equitable jurisdiction, therefore, does not exist. I have already determined that the Grants can maintain an action under § 7433 for unauthorized collection actions, namely, the levying upon their social security benefits. Accordingly, because they have failed to establish the applicability of the *Enochs* exception to the Anti–Injunction Act, the Grants' claim for release of the levy must be dismissed without prejudice.

## 2. RETURN OF BENEFITS

■ The Grants contend that they are entitled to a return of the social security benefits levied upon by the government. In support of this position, they point to 26 U.S.C. § 6343(b), which provides that "[i]f the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return" the property. But § 6343 does not act as a waiver of sovereign immunity, and therefore does not provide a right of action. *See Brown v. District Director*, 2002 WL 1760847, at *7 n. 4 (D.Colo. July 15, 2002) ("Section 6343 merely prescribes the circumstances under which the IRS may release a levy on personal property. It does not waive sovereign immunity or provide a cause of action against the United States or its employees."). *Cf. In re Atkins*, 279 B.R. 639, 650 (Bkrtcy.N.D.N.Y.2002) (holding that § 6343(c) does not waive sovereign immunity for a claim of interest).

Here, the Grants are essentially seeking a return of income tax paid. Their sole remedy, therefore, is a civil action for return pursuant to 26 U.S.C. § 7422. The government argues that the Grants may not maintain a § 7422 action because they have failed to exhaust the required administrative remedies. As discussed above, however, the Grants have sufficiently pled compliance with all conditions precedent to bringing such a suit. *See* Complaint at ¶ 6.

Nevertheless, the § 7422 claim fails to state a cause of action. A district court has jurisdiction over an action for a return only if the full assessment for the period has been paid. *See Flora v. United States*, 362 U.S. 145, 146, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) ("full payment of the assessment is a jurisdictional prerequisite to suit" for a return); *Horne v. United States*, 519 F.2d 51, 52 (5th Cir.1975) ("The District Court has jurisdiction only if the full assessment has been paid."). The Grants have not alleged that they have paid the full amount of the assessment against them.[2] Accordingly, the action for

---

2. Nor can they. As determined in Tax Case I, the Grants owe over $30 million in assess-     ments.

return of social security benefits must be dismissed without prejudice.

### IV. CONCLUSION

The government's motion to dismiss [D.E. 4] is GRANTED IN PART and DENIED IN PART. The motion is denied with respect to the claims in Count I for unauthorized collection actions relating to the termination of the installment agreement and the levying of the social security benefits. The motion is granted in all other respects.

The claims in Count I dealing with the filing of Tax Case I and Count II in its entirety are DISMISSED WITH PREJUDICE. The claims in Count I dealing with the motion to repatriate and the communication, as well as Count III's claims for return of social security benefits and release of the levy, are DISMISSED WITHOUT PREJUDICE.

The government shall answer the complaint by no later than July 21, 2003.