**Raphael BURGOS, Plaintiff,**

v.

**The UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, Defendant.**

No. 6:03–cv–1145–Orl–31JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 28, 2003.

Gregory M. Wilson, Orlando, FL, for Plaintiff.

John Michael Brennan, Richard E. Mitchell, Gray, Harris & Robinson, P.A., Orlando, FL, for Defendant.

## ORDER

PRESNELL, District Judge.

This cause comes for the Court's consideration on Plaintiff's Motion for Preliminary Injunction (Doc. 21).

## I. Background

At age nineteen, Plaintiff pled guilty to and was convicted of possession with intent to distribute, and distribution of, co-

caine base. Plaintiff was sentenced to fifty-seven months in federal prison, with four years supervised release [1] to follow. Plaintiff served approximately two and a half years of his sentence. His supervised release is scheduled to end January 2005.

Plaintiff has graduated from Valencia Community College, a two-year college within the Florida state university system, with an Associate of Arts degree. Thereafter, Plaintiff applied for upper level admission to the University of Central Florida ("UCF") but was denied admission based upon the lack of an Associate of Arts degree.[2] Thereafter, Plaintiff re-applied for admission. On March 4, 2003, the Director of UCF's Office of Student Rights and Responsibilities, Patricia MacKown, wrote to Plaintiff, informing him of her recommendation to Undergraduate Admissions that "you be delayed until the completion of your probation." (Doc. 4, Ex. B). On March 7, Plaintiff wrote to MacKown, requesting a re-review of his application and a meeting. (Doc. 4, Ex. C). Plaintiff claims that MacKown told him he could appeal the decision.

On March 23, Plaintiff wrote to Executive Director of Undergraduate Admissions, Gordon Chavis, appealing the decision "to deny me entrance to the university." (Doc. 4, Ex. D). On March 26, Chavis wrote to Plaintiff, confirming receipt of his appeal. (Doc. 4, Ex. E). Plaintiff claims a hearing for the appeal was set, but that Chavis cancelled it by telephone. On April 15, Plaintiff's counsel wrote a letter to Chavis (Doc. 4, Ex. F), asking for a meeting and more information on the appeal process. Plaintiff's counsel also wrote, "I just heard from my client,

---

1. Although the parties refer to this as "probation," the federal sentence actually imposed a 4–year term of supervised release. (*See* Case No. 6:98–cr–20–ORL–22, Doc. 37 at 3).

2. Presumably, Plaintiff failed to inform UCF in his first application that he already had an Associate of Arts degree.

who said you called and agreed to admission next year." (Doc. 4, Ex. F).

On April 17, Chavis sent Plaintiff a letter officially offering him admission for the Fall 2004 semester. (Doc. 4, Ex. G). On April 22, General Counsel for UCF, W. Scott Cole, wrote to Plaintiff's counsel, informing him that UCF decided not to admit Plaintiff until Fall 2004 because of Plaintiff's "previous conduct," consistent with Florida Statute § 1001.7(4). (Doc. 4, Ex. H). Cole also indicated that UCF did not have an appeal process for this "discretionary decision." (Doc. 4, Ex. H). Plaintiff's counsel and Cole corresponded throughout the month of June, discussing the legal issues surrounding Plaintiff's admission. (*See, e.g.,* Doc. 4, Exs. L & M).

On July 1, Chavis wrote Plaintiff another letter, stating in relevant part:

> The Office of Student Rights and Responsibilities reviews all applications from students who indicate that they have a history of criminal ... actions, and makes recommendations to the Office of Undergraduate Admissions regarding admission decisions. Specifically in your case, your application disclosed a criminal background and the OSPR reviewed the paperwork you submitted and conducted a personal interview. This information was considered by our Director of the Office of Student Rights and Responsibilities for a final recommendation. The Director recommended that you be offered admission for a future term.
>
> The decision was reached based upon several factors. Your criminal activity involved the distribution of illegal narcotics, which is of special concern to any university community, especially ours. Your length of time served, the short period of time since you left prison and the time you have remaining on proba-

tion, were all considered. More specifically, you served 2.5 years of a 57 month prison term for possession with the intent to distribute and distribution of cocaine base. Your probation terminates in January of 2005.

> In considering this combination of facts, the Director also took into consideration your efforts to attend Valencia Community College to pursue academic endeavors, your current compliance with the terms of your probation, and your involvement in martial arts. However, you have held no employment since your release from prison and have continued to live with your mother and step-father without any demonstration of self support.
>
> After weighing all of these facts, the Director of OSPR recommended that you not be offered admission for the fall 2003 term, but that you be offered admission for the fall 2004 term, assuming there are no further violations of the law. While full completion of probation is usually recommended in cases where the criminal act is as severe as in your specific case, it was determined that in weighing all of the facts, the fall 2004 term was close enough to the completion of your probationary period, to warrant admission for that term.
>
> As we previously communicated with you, this offer of admission cannot be appealed, but we did want to make you aware of the circumstances surrounding our decision....

(Doc. 4, Ex. N).

On July 17, 2003, Plaintiff filed suit against Defendant in Florida state court, alleging a violation of his due process rights under the Fourteenth Amendment of the U.S. Constitution and under the Florida State Constitution, and requesting a noticed hearing before a disciplinary body. Defendant removed the action to

this Court on August 7. Plaintiff now moves for a preliminary injunction requiring Defendant to hold a hearing with reasonable notice to Plaintiff to determine whether Plaintiff's past conduct merits denying him admission to UCF for the Fall 2003 term. Classes for the Fall 2003 term began on August 25.

## II. Standard of Review

To obtain a preliminary injunction, the plaintiff must show:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest.

*Suntrust Bank v. Houghton Mifflin Co.,* 268 F.3d 1257, 1265 (11th Cir.2001) (quoting *American Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1410 (11th Cir.1998)). Plaintiff bears the burden of proving each of these four factors. *Nnadi v. Richter,* 976 F.2d 682, 690 (11th Cir.1992).

The primary purpose of a preliminary injunction is to "preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank,* 268 F.3d at 1265 (quoting *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville,* 896 F.2d 1283, 1284 (11th Cir.1990)). A mandatory preliminary injunction requiring defendant to take affirmative action is proper only in "rare instances." *Harris v. Wilters,* 596 F.2d 678, 680 (5th Cir.1979).[3]

## III. Analysis

Plaintiff has not shown a substantial likelihood on the merits because he has not shown a constitutionally protected right[4] to admission for a particular term at a state university. Plaintiff concedes that "[a]n applicant with no more than a unilateral expectation of becoming a student does not have the same rights as a student." (Doc. 21 at ¶ 5(1)). Hence, the pertinent question here is whether Plaintiff is an applicant or a student.

Florida Statute, Section 1007.23 provides:

(1) The State Board of Education shall establish in rule a statewide articulation agreement that governs:

. . .

(b) The articulation agreement must specifically provide that every associate in arts graduate of a community college shall have met all general education requirements and must be granted admission to the upper division of a state university . . .

Fla. Stat. § 1007.23(1). Plaintiff contends that the words of this statute confer on him—a graduate of a community college—student status, therefore making him a person with a constitutionally protected property interest. A court must enforce a statute according to its plain and ordinary meaning. Indeed, a court's interpretive function ceases where a statute's terms are unambiguous. *In re Griffith,*

---

**3.** All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**4.** Plaintiff claims a property interest under both the U.S. Constitution and the Florida Constitution. The two interests are coexten-sive, and thus the Court's analysis applies with equal force to both the federal and state claims. *See, e.g., Florida Canners Ass'n v. Fla. Dep't of Citrus,* 371 So.2d 503, 513 (Fla. 2d DCA 1979) (discussing as one the federal and state constitutional guarantees relating to a taking of property).

206 F.3d 1389, 1393 (11th Cir.2000) ("Interpretation of a statute begins with the language of the statute itself. . . . As a general rule, if the language of the statute is plain, then our interpretative function ceases and we should enforce the statute according to its terms . . . .") (internal citations and quotations removed). In this case, the terms of the statute are not ambiguous. The statute guarantees admission to community college graduates with Associates of Arts degrees who have met all of their general education requirements.[5] The statute does not confer student status onto applicants of a state university who have not yet accepted an offer for admission. Plaintiff is an applicant who has been offered admission for the 2004 semester; he is not yet a student in the university system.[6]

Plaintiff, in essence, claims a unilateral expectation of admission to a state university according to a specific, desired time frame. The statute is silent,[7] however, as to the time frame in which Defendant must admit a community college graduate. The Court has no basis to read into the statute a requirement that admission to a state university occur *immediately* upon the earning of a community college degree or *immediately* following the submission of a complete application.

Because Plaintiff has failed to show substantial likelihood of success on the merits of his claims, the Court need not inquire into the other elements required for a preliminary injunction, and the Court must deny Plaintiff's request for a preliminary injunction requiring Defendant to hold a noticed hearing.[8]

## IV. Conclusion

For all the foregoing reasons, it is therefore

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. 21) is **DENIED**.

---

**5.** Indeed, there is no dispute that Plaintiff has satisfied his general education requirements.

**6.** Having not yet become a student at UCF, it is impossible for Plaintiff to have been expelled. Thus, the expulsion cases to which Plaintiff cites are inapposite. *See, e.g., Dixon v. Ala. State Bd. of Educ.,* 294 F.2d 150 (5th Cir.1961); *Wallace v. Fla. A & M Univ.,* 433 So.2d 600 (Fla. 1st DCA 1983); *Woody v. Burns,* 188 So.2d 56 (Fla. 1st DCA 1966).

**7.** Plaintiff also cites administrative rule 6FL ADC 6A–10.024(4), which states that "Every

Associates of Arts graduate of a Florida community college shall be granted admission to an upper division program offered by a State university. . . ." This statute also is silent as to the timing of admission and hence adds nothing to Plaintiff's argument.

**8.** Plaintiff initially was given the right to appeal, but the need for the appeals process subsequently was mooted by Plaintiff's admission for the Fall 2004 semester.